FOR PUBLICATION

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

RICHARD FAHIE,                          )
                                        )
              Appellant,                )
                                        )
                                        )
       v.                               )  D.C. Crim. App. No. 2006-27
                                        )     Sup.Ct.Crim. No. 2005-294
PEOPLE OF THE VIRGIN ISLANDS,           )
                                        )
              Appellee.                 )
_____ )

On Appeal from the Superior Court of the Virgin Islands,
The Honorable Rhys S. Hodge presiding.

Considered: March 5, 2010
Filed: October 24, 2013

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the
Virgin Islands; **RAYMOND L. FINCH**, Judge of the District Court of the
Virgin Islands; and **JULIO A. BRADY**,[1] Judge of the Superior Court of
the Virgin Islands, sitting by designation.

ATTORNEYS:

**Sharmane Davis-Brathwaite, Esq.**
St. Thomas, VI
        *For the Appellant.*

**Tiffany V. Robinson, AAG**
St. Thomas, VI
        *For the Appellee.*

**MEMORANDUM OPINION**

---

[1] While Judge Brady sat on the panel that considered this matter, he retired before
the decision was issued.

**Per curiam,**

Appellant Richard Fahie ("Fahie") appeals his conviction in the Superior Court for attempted murder, first degree assault, and two counts of carrying an unlicensed firearm during the commission of a crime of violence. For the reasons stated below, the Court will affirm Fahie's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 2005, between 8:30 p.m. and 9:00 p.m., Patrick Benjamin ("Benjamin") was shot near the Tau Club in the Smith Bay area of St. Thomas. (J.A. 65, 67. Officer Earl Mills ("Mills") was dispatched to the scene of the shooting. (J.A. 28.) Upon arriving, Mills observed Benjamin on the ground, lying in blood. (J.A. 29.) Benjamin was transported to the emergency room and treated by Dr. Sidney Commissiong ("Commissiong"). (J.A. 37.) Commissiong determined that Benjamin had gunshot wounds in his left shoulder, left hand, and back. (J.A. 37.) Detective Joel Dowdye ("Dowdye") visited Benjamin in the hospital and obtained a statement from Benjamin about the shooting. (J.A. 56.) Dowdye later provided Benjamin with a photo array of six faces from which Benjamin identified Fahie as the shooter. (J.A. 57-58.) On May 25, 2005, Dowdye obtained a warrant for Fahie's arrest. (J.A. 59.) Fahie was arrested on July 6, 2005. (J.A. 8.)

The People filed a five count Information, later amended,

against Fahie. Count One charged Fahie with attempted first degree
murder, in violation of Sections 921(a)(1) and 331 of Title 14 of the
Virgin Islands Code. Count Two charged Fahie with carrying an
unlicensed firearm during the attempted commission of a first degree
murder in violation of Sections 2253(a), 921, 922(a), and 331, Title
14 of the Virgin Islands Code. Count Three charged Fahie with first
degree assault in violation of Section 295, Title 14 of the Virgin
Islands Code. Count Four charged Fahie with carrying an unlicensed
firearm during the commission of a first degree assault in violation
of Sections 2245(a) and 295(1), Title 14 of the Virgin Islands Code.
Count Five charged Fahie with possession of ammunition in violation
of Section 2256(a), Title 14 of the Virgin Islands Code.

The Superior Court appointed the Territorial Public Defender's
Office as counsel for Fahie. At his arraignment, Fahie entered a plea
of not guilty on all counts of the Information.

The trial began on February 14, 2006. The People presented the
testimony of Mills, Dowdye, Commissiong, and Benjamin. Fahie's
counsel did not object to any testimony by Mills, Dowdye, Commissiong,
and Benjamin on the identification of Fahie. (J.A. 30, 41, 58, 66-67.)
Fahie's counsel also did not object testimony that was potentially
hearsay or inadmissible character evidence. In some cases, Fahie's
counsel raised objections on these grounds so far removed from the
disputed testimony that the trial overruled the objections as tardy.

After the close of the People's case, Fahie presented the
testimony of his mother, Shirley Fahie, as an alibi witness. (J.A.

24.)

On February 15, 2006, the jury found Fahie guilty on Counts One,
Two, Three, and Four of the Amended Information. (J.A. 108.) The jury
found Fahie not guilty on Count Five. (J.A. 108.)

On appeal, Fahie raises two issues: (1) that his counsel provided
ineffective assistance, and (2) that he is entitled to a new trial
due to plain error.

## II. <u>DISCUSSION</u>

### A.   Jurisdiction

This Court has jurisdiction to review criminal judgments and
orders of the Superior Court in cases in which the defendant has been
convicted, and has not entered a guilty plea. *See* V.I. CODE ANN. tit.
4, § 33 (2006); Revised Organic Act of 1984, 28 U.S.C. § 1613(a)
(2006).

### B.   Standard of Review

#### 1.   Ineffective Assistance of Counsel

To establish a violation of the Sixth Amendment due to the
ineffective assistance of counsel, a defendant must show both
deficiency in performance and prejudice. *Strickland v. Washington*,
466 U.S. 668, 700 (1984). "The 'deficiency' step asks whether
counsel's conduct 'fell below an objective standard of
reasonableness' viewed as of the time it occurred." *United States v.
Baird*, 218 F.3d 221, 226 (3d Cir. 2000) (citing *Strickland*, 466 U.S.
at 688, 690; *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)).
"The 'prejudice' prerequisite asks whether 'there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694; *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991)).

### 2. Plain Error

Where trial counsel fails to object to an error, we reverse only if the asserted violation amounts to "plain error." *See* Fed. R. Crim. P. 52(b) (2002)[1]; *United States v. Davis*, 407 F.3d 162, 164 (3d Cir. 2005). "Where a defendant demonstrates error that is plain, and that affects substantial rights, we may correct that error where the fairness, integrity, or public reputation of judicial proceedings was affected." *Davis*, 407 F.3d at 164 (quotations and citations omitted). In order to affect substantial rights, an error must have been prejudicial, and must have "affected the outcome of the [trial] court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).

### III. <u>ANALYSIS</u>

### A. Ineffective Assistance of Counsel

Joseph argues that his counsel provided ineffective assistance at trial by failing (1) to adequately present the defense of self-defense and (2) to preserve issues for appeal.

"It is well settled . . . that Sixth Amendment ineffective assistance of counsel claims . . . are generally not entertained on

---

[1] Pursuant to Federal Rule of Criminal Procedure 52(b), "plain error, that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b) (2002).

a direct appeal." *United States v. McLaughlin*, 386 F.3d 547, 555 (3d

Cir. 2004) (citation omitted). "This refusal to entertain . . . claims

on direct review stems from the reality that such claims frequently

involve questions regarding conduct that occurred outside the purview

of the [trial] court and therefore can be resolved only after a factual

development at an appropriate hearing." *Id.* (citations and quotations

omitted). There is a narrow exception to this rule: "[W]here the

record is sufficient to allow determination of ineffective assistance

of counsel, an evidentiary hearing to develop the facts is not

needed." *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991).

*But see Massaro v. United States*, 538 U.S. 500, 507 (2003) (noting

that few ineffective assistance claims "will be capable of resolution

on direct appeal"). However, "[w]here a claim of ineffective

assistance of counsel is based on attorney incompetence, the lack of

a fully developed record often precludes a comprehensive inquiry into

the elements of strategy or tactics that may have entered into defense

counsel's challenged decision." *McLaughlin*, 386 F.3d at 556 (citing

*Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984)).

In *McLaughlin*, the Third Circuit determined that even where the

defendant's counsel failed to introduce a critical piece of evidence

and stipulated to the admission of damaging evidence, the record did

not support a determination of whether counsel behaved reasonably.

*Id.* at 555-56.

The record in this matter does not permit us to consider the

reasonableness of the trial strategy of Fahie's counsel. *See Massaro*,

538 U.S. at 505 (noting that, because evidence produced at trial is devoted to a defendant's guilt or innocence, the resultant record is inadequate to assess trial counsel's performance). Specifically, the record is inadequate for a comprehensive inquiry into the strategy and tactics behind counsel's decisions not to object to evidence introduced by the People or present alibi evidence. Because Fahie's ineffective assistance of counsel argument does not "fit[] into that narrow class of ineffectiveness claims amenable to review on direct appeal," *McLaughlin*, 386 F.3d at 556, it is premature and better left for collateral attack. Accordingly, we decline to address this argument.

## B. Plain Error

### 1. Hearsay Allegations

Fahie argues that the Superior Court erroneously permitted the prosecutor to introduce hearsay evidence when questioning Mills and Dowdye. Fahie's counsel did not properly object to the questioning at trial.

A verdict or judgment shall not be set aside or reversed "by reason of the erroneous admission of evidence unless [] there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." V.I. CODE ANN. tit. 5, § 774 (2012). Because Fahie did not object to the admission of Mills's and Dowdye's statements, this matter is reviewed for plain error. *Nibbs v. Roberts,* D.C. Civ. App. No. 1991-029, 1995 WL 78295 at *13 (D.V.I. App. Div. Feb. 8, 1995) (finding that an issue was not

Brown Test. (J.A. 51-52.) The jury also heard from Benjamin, who

testified:

A.    [T]hen I hear "You punk, you think me ain't get it for all of ah you." And then I heard, bow! A gunshot. When I heard the gunshot then I spin back the gunshot didn't touch me. I spin back I saw Richard Fahie with a gun in his hands.

Q.    What else happened?

A.    I jump and I hold the gun into his left hand. I hold the gun into his left hand, the phone was in my right hand. And the first shot didn't touch me. The second shot hit me into my center finger right here. The third shot hit me right into the palm of my hand right here. . . The fourth shot hit me right here in my inside muscle on my left arm. One took me right here on top of my shoulder, on my left shoulder. One took me straight underneath my arm on my left hands. The next one took me right here. And then when I push him away from me he drop -- the phone drop -- the cordless phone drop at the time between the septic tank and the circle way.

Q.    And what happen?

A.    When I push Richard Fahie Richard Fahie drop together with me, I drop on my stomach on a heap of dirt and then Richard Fahie between the septic tank and the circle way. So I was feeling like I were going to die, and then when he was going, standing he was going like nine feet away from me already. And then I call out "Richard Fahie from Bordeaux shot me. Richard Fahie from Bordeaux shot me. Richard Fahie from Bordeaux shot me. Richard Fahie from Bordeaux shot me." The reason why I was saying that because I wanted the neighborhood to hear that it's Richard is the one who shot me in case I die.

        And then I were on the ground staggering and suffering and bleeding up, and then when I say, "You ain't dead yet you fucking punk." Bow! The last one in my back. And then I start feeling my two legs start to beat, beat, beat, beat, beat. And then I say, "Oh God, I die."

(J.A. 67-70.)

        It is clear that the strength of the other evidence on the record

outweighs the character evidence that was improperly introduced.
*United States v. Leake*, 396 Fed. App'x 898 (3d Cir. 2010) (testimony
that a defendant was found in possession of "cop killer" bullets was
outweighed by "overwhelming evidence of Leake's guilt, including the
eyewitness testimony of two police officers that Leake was carrying
two firearms, which were both recovered during the arrest").

Finally, although neither party requested a curative
instruction to the jury, and the Superior Court failed to provide one
*sua sponte*, the line of questioning which solicited the character
evidence about Fahie ceased after the Court cautioned the People
against continuing such a line of inquiry, stating: "all of that is
irrelevant and prejudicial in my opinion about why he is wanted for
or not wanted. You're suggesting that he is -- that there's
outstanding charges against him and I don't think that's proper."
(J.A. 79-81.)

Because of the limited occurrences of character evidence and
their minor role in the People's case, the character evidence did not
"affect[] the outcome of the [trial] court proceedings" and rise to
the level of reversible plain error. *Olano*, 507 U.S. at 734.

### IV. CONCLUSION

For the reasons discussed above, we will affirm Fahie's
conviction in all respects.  An appropriate judgment follows.